UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ZIBERIA MARICO CARERO,           )
                                 )
            Petitioner,          )
                                 )
v.                               )        No.:   3:21-CV-122-TAV-JEM
                                 )
TENNESSEE ATTORNEY               )
GENERAL SLATERY and              )
HILTON HALL,                     )
                                 )
            Respondents.         )

## MEMORANDUM OPINION

Petitioner, a Tennessee prisoner, filed a pro se petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence for possession of
0.5 grams or more of cocaine in a school zone with intent to sell [Doc. 1]. Respondent
filed the state court record [Doc. 11] and a response in opposition to the petition [Doc. 13].
Petitioner did not file a reply and his time for doing so has passed. *See* E.D. Tenn. L.R.
7.1, 7.2.

After reviewing the parties' filings and the state court record, the Court finds that
Petitioner is not entitled to relief under § 2254, and no evidentiary hearing is warranted.
*See* Rules Governing § 2254 Cases, Rule 8(a); *Schriro v. Landrigan*, 550 U.S. 465,
474 (2007). Accordingly, the habeas corpus petition will be **DENIED**, and this action will
be **DISMISSED**.

## I. BACKGROUND

This case arises from a September 2012 controlled drug buy between Petitioner and a confidential informant ("the CI") that took place in the presence of an undercover police officer. In June of 2013, the Knox County grand jury returned a presentment[1] with five counts: (1) possession of more than 0.5 grams of cocaine within 1,000 feet of the real property of a school with intent to sell; (2) possession of more than 0.5 grams of cocaine on the facilities of any school with intent to deliver; (3) sale of more than 0.5 grams of cocaine within 1,000 feet of the real property of a school; (4) delivery of more than 0.5 grams of cocaine within 1,000 feet of the real property of a school; and (5) a criminal gang enhancement [Doc. 11-1, p. 5–9]. Petitioner pleaded not guilty to all counts and the matter proceeded to trial by jury.

On the first day of trial, before jury selection,[2] the prosecutor amended Count Two of the presentment by removing the phrase "on the facilities of any school" and replacing it with "within 1,000 feet of the real property of a school" [Doc. 11-4, p. 6]. The prosecutor also amended Counts Three and Four by removing the allegation that the offenses occurred in a school zone [*Id.* at 7]. Petitioner's attorney did not object to these changes [*Id.*].

The following summary of the trial is taken from the Tennessee Court of Criminal Appeals ("TCCA")'s opinion denying Petitioner's post-conviction appeal:

---

[1] In this opinion, the Court uses the terms "presentment" and "indictment" interchangeably.

[2] Petitioner maintains that the State amended the presentment after the jury had been sworn [Doc. 1, p. 26]. However, the trial transcript makes clear that the jury was sworn after the presentment was amended [*See* Doc. 11-4, p. 6–7, 14].

2

At trial, the defense objected that the confidential informant had not been listed as a witness on the presentment and that her testimony should be excluded. The State responded that the confidential informant's identity had been revealed to the Petitioner's first attorney and that trial counsel, whose investigator had interviewed the confidential informant, also knew the confidential informant's identity. The prosecutor argued that there was no surprise to the defense, as the confidential informant's voice appeared on the recordings documenting the offense. Defense counsel noted that while he had located the witness, he had not done so based on any information provided by the prosecution. The trial court concluded that Tennessee Code Annotated section 40-17-106 did not require exclusion of the witness unless the defense could show prejudice, and the court found no prejudice and thus permitted the witness to testify.

The confidential informant testified that she was acquainted with the Petitioner and had "been around" him twenty or thirty times. She acknowledged that she was addicted to drugs, although she stated she was "not using right now" and would not return a positive drug test if tested that day. She testified that prior to making the purchase on September 10, 2012, she made a recorded telephone call to the Petitioner in which she told him she wanted to purchase $100 of crack cocaine. She was searched before she met with the Petitioner to make sure she had no money or drugs. The Petitioner called her back to change the location of the sale, but this call was unexpected and was not recorded. The confidential informant stated that the Petitioner told her to go to "Teresa's apartment." She drove to that location with Officer Geddings in the passenger's seat. She backed into a parking spot and called the Petitioner. While she was on the telephone with the Petitioner, he walked up "from the right side," and she could hear him on the telephone and through the car. She did not know whether or not he came from an apartment. The Petitioner got into the back seat of the vehicle and gave Officer Geddings a bag of cocaine. After the confidential informant complained that [the] bag did not contain enough cocaine, the Petitioner added a small amount to the bag and accepted $100 from the confidential informant. The Petitioner stepped out of the car, and someone said, "Man, he's the police." The Petitioner called the confidential informant to ask her to return to the parking lot so he could see Officer Geddings, but the confidential informant was able to satisfy him by sending a photograph of a parole identification card with Officer Geddings's picture on it. The recording of the initial telephone call and the audio recording made during the transaction were introduced into evidence.

3

Officer Geddings testified that after the confidential informant named the Petitioner as a potential source of drugs, he created a photographic lineup from which the confidential informant identified the Petitioner. The confidential informant then placed the recorded telephone call. Officer Geddings left the room to ready the money to be used in the transaction and to set up a transmitter which would relay real-time audio to nearby officers. When Officer Geddings returned, the confidential informant notified him that the Petitioner had called back. Trial counsel objected to testimony regarding the substance of the call, and the trial court sustained the objection; however, Officer Geddings testified in response to a subsequent question that the Petitioner had changed the location of the transaction. He reiterated this testimony during cross-examination, but he acknowledged that he did not have personal knowledge of what was said during the unrecorded telephone call. Officer Geddings and the confidential informant drove to the rendezvous location, and Officer Geddings directed the confidential informant to park where law enforcement would be able to observe them. Officer Geddings stated they were parked near the edge of a building and that he looked over his shoulder and saw the Petitioner walking parallel to the front of the building. Using a map, Officer Geddings indicated the Petitioner's location at the time that Officer Geddings first saw him. Although Officer Geddings had expected the transaction to occur outside the vehicle between the confidential informant and the Petitioner, the Petitioner entered the vehicle. Officer Geddings quickly hid a recording device and notebook, and the confidential informant identified Officer Geddings as her brother-in-law.

The Petitioner passed a plastic bag to the confidential informant, who handed it to Officer Geddings. The two complained that the quantity was insufficient, and the Petitioner added two rocks and returned the bag to Officer Geddings. The confidential informant gave the Petitioner $100. At the time of his arrest three weeks later, the Petitioner was in possession of the telephone that was used to communicate with the confidential information regarding the drug transaction.

. . . .

Special Agent Carl Smith of the Tennessee Bureau of Investigation ("TBI") testified regarding the laboratory analysis of the substance in the bag. Trial counsel at first objected that Special Agent Smith had not been previously disclosed as a witness, but when the prosecutor explained that Special Agent Smith was the laboratory analyst who was named in the report, trial counsel withdrew the objection. The laboratory report introduced into evidence was signed by Special Agent Smith, who testified that the substance in the bag was 0.73 grams of a substance containing cocaine base. He stated that 0.73

4

grams was the weight of the substance minus any packaging and that the weight might not be the same as the field-tested weight due to packaging and possibly due to evaporation.

Ms. Donna Roach of the Knox County Geographic Information Systems testified as an expert in geographic information systems. She created a map showing a one thousand-foot buffer around a nearby elementary school, and the map was accurate to within ten inches per thousand feet. She testified that someone approaching from the side of a particular building on the map would "[d]efinitely" be in the school zone. Mr. Dan Stewart testified that the elementary school was operating as a school on the date in question.

In denying a motion for judgment of acquittal, the trial court summarized that both the confidential informant and Officer Geddings indicated by means of the map that when they first saw the Petitioner, he was within the school zone, although the vehicle was parked outside the school zone. The defense did not present proof, and the jury convicted the Petitioner of possession of 0.5 grams or more of cocaine in a school zone with intent to sell, possession of 0.5 grams or more of cocaine in a school zone with intent to deliver, sale of 0.5 grams or more of cocaine, and delivery of 0.5 grams or more of cocaine. The jury then considered and rejected the gang enhancement after the Petitioner testified that he was not a member of the Eastside Bloods as charged, but of the Vice Lords.

*Carero v. State,* No. E2019-01123-CCA-R3-PC, 2020 Tenn. Crim. App. LEXIS 240, at *3–9 (Crim. App. Apr. 14, 2020) ("*Carero II*").

At sentencing, the trial court merged the conviction for possession of cocaine in a school zone with intent to deliver (Count Two) with the conviction for possession of cocaine in a school zone with intent to sell (Count One) [Doc. 11-5, p. 91]. The trial court also merged the conviction for delivery of cocaine (Count Four) with the conviction for sale of cocaine (Count Three) [*Id.*]. The trial court applied an enhanced sentencing range to Count Three because Petitioner's criminal history qualified him as a "multiple offender" [*Id.* at 92]. No range enhancement applied to Count One [*Id.*]. The trial court also found

5

that Petitioner's extensive criminal history and failure to comply with a sentence involving release into the community qualified as enhancement factors under Tenn. Code Ann. § 40-35-114 (1) & (8) [*Id.* at 94]. Ultimately, the trial court sentenced Petitioner to a term of twenty-three years on Count One and eighteen years on Count Three to run concurrent with the sentence in Count One [*Id.* at 97].

Petitioner appealed to the TCCA on the grounds that (1) the evidence was insufficient to support his conviction; (2) the trial court should have merged all of his offenses into one conviction; and (3) the trial court improperly applied sentencing enhancement factors [Doc. 11-8, p. 19–27]. The TCCA denied the first and second grounds for relief. *State v. Carero*, No. E2015-00140-CCA-R3-CD, 2015 Tenn. Crim. App. LEXIS 1036, at *2 (Crim. App. Dec. 22, 2015) ("*Carero I*"). However, it found that Petitioner's multiple convictions violated the Double Jeopardy Clause. *Id.* Accordingly, the TCCA merged Petitioner's convictions into Count One, possession of cocaine with intent to sell within a school zone. *Id.* Petitioner's twenty-three-year sentence for Count One remained unchanged.

Next, Petitioner filed a pro se petition for post-conviction relief, alleging, among other claims, that his trial counsel was ineffective for failing to object to the multiplicitous indictment [Doc. 11-14, p. 9–10]. Petitioner acknowledged that his convictions had been merged on direct appeal but asserted that due to the Double Jeopardy violation, all of his convictions should have been dismissed [*Id.* at 10]. Petitioner was appointed counsel, and his post-conviction attorney filed amendments to that petition [*Id.* at 25, 29, 75, 78]. After

6

holding a hearing [*see* Doc. 11-16], the post-conviction court denied relief [Doc. 11-14, p. 92]. Petitioner appealed, and the TCCA affirmed. *Carero II*, at *33.

Petitioner then timely filed the instant § 2254 petition.

## II.    STANDARD OF REVIEW

To obtain relief under section § 2254, a state prisoner must establish that the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d). Even an incorrect state court decision is not necessarily unreasonable. *Schriro*, 550 U.S. at 473 (observing that under § 2254 "[t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold").  Rather, a petitioner must show that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Before a federal court may grant habeas corpus relief, the petitioner must have first exhausted his available state remedies for the claim.  28 U.S.C. §2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  "It is not enough that all the facts necessary to support

7

the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). Instead, the doctrine of exhaustion requires a petitioner to present "the same claim under the same theory" to the state courts as he seeks to present in federal court. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (finding Constitutional claim must be presented in federal court under the same theory as presented in state appellate process). In Tennessee, presentation of a claim to the TCCA satisfies this requirement. Tenn. S. Ct. R. 39.

If the petitioner never presented a claim to the highest available state court and a state procedural rule now bars presentation of the claim, the claim is technically exhausted but procedurally defaulted.[3] *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Federal courts lack jurisdiction to consider the merits of a procedurally defaulted habeas claim unless the petitioner can establish that there is "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750.

### III. ANALYSIS

In his habeas petition, Petitioner raises multiple claims of ineffective assistance of counsel, trial court error, and prosecutorial misconduct, some of which he calls "Grounds" and some which he calls "Arguments." The Arguments section contains overlapping

---

[3] Tennessee petitioners may generally proceed only through one full round of the post-conviction process, and Tennessee imposes a one-year statute of limitation on such actions. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

claims that are difficult to understand, with some sections being incomprehensible. For the purposes of clarity, the Court will organize its discussion of Petitioner's claims as follows:

1.  Trial counsel was ineffective for failing to (1) object on Double Jeopardy grounds; (2) impeach Officer Geddings; (3) challenge admission of a phone call; (4) "address the proof" that the CI was asking for money and Petitioner was bringing it; (5) establish that CI was "on the run;" (6) call witnesses; and (7) adequately present mitigation.

2.  The trial court erred when it (1) conducted his trial without having subject matter jurisdiction; (2) abused its discretion at sentencing; and (3) failed to properly instruct the jury.

3.  The prosecution engaged in misconduct by (1) moving to amend the presentment without adequate notice; (2) causing a Confrontation Clause violation; (3) relying on perjured testimony; and (4) seeking sentencing enhancements.

The Court will address the issue of exhaustion before reviewing the merits of Petitioner's claims.

### A. Exhaustion

The Court must first consider whether Petitioner exhausted available state court remedies for his claims. The Court notes that Petitioner raised several claims in his post-conviction appeal that share the same factual basis as some claims he raises here. Petitioner states that he does not know if his claims were previously presented to the TCCA [Doc. 1, p. 7]. Respondent seems to argue that with the exception of the Double Jeopardy claim, all of Petitioner's claims are procedurally defaulted [*See generally* Doc. 13, p. 10, 13–20].

9

Petitioner's Double Jeopardy claim is properly exhausted. In his post-conviction appeal to the TCCA, Petitioner raised a Double Jeopardy claim based on his attorney's failure to object to the multiplicitous indictment [Doc. 11-17, p. 8–9]. Although Petitioner does not provide any detail regarding the instant Double Jeopardy claim—beyond alleging ineffective assistance of counsel in connection with a Double Jeopardy violation—Respondent construes it as the same claim Petitioner raised before the TCCA on post-conviction appeal. The Court agrees with that interpretation.

Petitioner did not properly present any of his other habeas claims to the TCCA. Therefore, those claims are procedurally defaulted.[4] Petitioner has not established cause and prejudice to excuse the default of these claims or demonstrated that this Court's failure to consider the claims would result in a miscarriage of justice. Therefore, with the exception of his Double Jeopardy claim, Petitioner's claims are barred by the doctrine of procedural default.

Moreover, as discussed below, even if all of Petitioner's claims were properly exhausted, he would not be entitled to relief.

---

[4] The Court notes that Petitioner's Confrontation Clause claim is based on the same facts as a hearsay claim he raised in his post-conviction petition [*See* Doc. 1 p. 6; Doc. 11-17, p. 6]. However, a hearsay objection does not preserve a Confrontation Clause claim. *See Arias v. Lafler*, 511 F. App'x 440, 441 (6th Cir. 2013) ("The inmate objected on the basis of hearsay alone at trial, so his Confrontation Clause claim was not properly preserved."). In addition, Petitioner cited the State's failure to include the CI's name on the presentment as a basis for relief in both his post-conviction and habeas petitions [*See* Doc. 1, p. 13; Doc. 11-17, p. 2, 14]. However, the claims presented to the TCCA relied on theories of ineffective assistance of counsel and an alleged violation of the Tennessee Constitution, while the argument he raises here involves an alleged violation of his federal Due Process rights based on the trial court's lack of subject matter jurisdiction. Because Petitioner did not present these claims to the state and federal court under the same legal theory, they are not properly exhausted. *See Pillette*, 824 F.2d at 497.

**B.     Merits**

**1.     Ineffective Assistance of Counsel**

First, Petitioner contends that he is entitled to habeas relief due to the ineffective assistance of his trial counsel. The Sixth Amendment guarantees the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on a claim of ineffective assistance, a petitioner must establish (1) that his attorney's performance was deficient and (2) that he was prejudiced as a result. *Id*. To satisfy the performance prong, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 671. To satisfy the prejudice prong, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given that "counsel's decisions are entitled to deference by the reviewing state court, and the state court's conclusions about counsel's performance are entitled to an additional layer of deference by a reviewing federal habeas court." *White v. Steele*, 629 F. App'x 690, 693 (6th Cir. 2015) (*citing Richter*, 562 U.S. at 101).

**a.     Double Jeopardy (Ground One)**

In his first ineffective assistance claim, Petitioner alleges that he was denied effective assistance of counsel because his conviction was obtained in violation of the Double Jeopardy Clause [Doc. 1, p. 5]. The Double Jeopardy Clause of the Fifth Amendment "protects against a second prosecution for the same offense after conviction

11

or acquittal, and against multiple punishments for the same offense." *United States v. Turner*, 324 F.3d 456, 461 (6th Cir. 2003) (citation omitted). As noted above, the Court construes this claim as being the same Double Jeopardy claim that Petitioner raised in his post-conviction petition. There, he argued that his attorney was ineffective for failing to object to the multiplicitous indictment and that his convictions should have been set aside or dismissed, rather than merged [Doc. 11-17, p. 8–9].

In rejecting this claim, the TCCA observed that all of Petitioner's convictions had been merged on direct appeal and stated as follows:

> Even if trial counsel performed deficiently in not requesting merger, any error was corrected on appeal. "A new trial is not the remedy for a double jeopardy violation; instead, a reversal of the conviction and a dismissal of the relevant charge or a merger of the counts that violate double jeopardy principles are the proper remedies." 2015 Tenn. Crim. App. LEXIS 1036, [WL] at *8. Because the Petitioner has already received the proper remedy, he cannot demonstrate prejudice. *Tarrance Parham v. State*, No. W2013-01437-CCA-R3-PC, 2014 Tenn. Crim. App. LEXIS 1126, 2014 WL 7179330, at *10 (Tenn. Crim. App. Dec. 17, 2014) (concluding that when the petitioner's convictions had been merged on appeal, he was not entitled to post-conviction relief on the basis that counsel was deficient in not arguing that the convictions violated double jeopardy). The Petitioner has already received relief on this claim. *Id.* Because Petitioner already received the appropriate remedy for the Double Jeopardy claim he raised on direct appeal, he is not entitled to relief on double jeopardy grounds.

*Carero v. State*, No. E2019-01123-CCA-R3-PC, 2020 Tenn. Crim. App. LEXIS 240, at *25–26 (Crim. App. Apr. 14, 2020).

Petitioner has not cited any basis for finding that the TCCA's decision involved an unreasonable application of Constitutional law or an unreasonable determination of the facts. Moreover, it is well established that merger is an acceptable remedy where a

12

defendant was convicted of multiplicitous counts. *See United States v. Ealy*, 682 F. App'x 432, 438 (6th Cir. 2017) (observing that "merger is an appropriate remedy when counts are multiplicitous."). Because Petitioner received an acceptable remedy, he cannot show that he was prejudiced by the Double Jeopardy violation or his attorney's failure to object to it. This claim is without merit.

### b.   Failure to Impeach Officer Geddings (Ground Two)

Next, Petitioner asserts that his attorney was ineffective because he failed to impeach Officer Geddings's testimony "regarding the confidential informant," "forged documents," and an alleged break in the chain of custody when evidence was placed in Geddings's personal locker [Doc. 1, p. 5]. Petitioner does not point to any evidence in the record in support of these allegations. Because these claims are merely conclusory, they do not provide a basis for relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (finding that a claim of ineffective assistance of counsel did not warrant relief because it was "merely conclusory").

### c.   Failure to Challenge Admission of Phone Call (Ground Two)

Petitioner also faults his attorney for failing to object to the admission of the recorded phone call in which Petitioner agreed to meet the CI for the drug buy [Doc. 1, p. 5]. Petitioner asserts that the recording should have been excluded because it was obtained in "violation of wiretapping law" [*Id.*]. However, no wiretap was used in this case, since the phone call was recorded with the consent of the CI. Moreover, as

13

Respondent points out, "[w]hen authorities obtain tape recordings of a conversation when one party . . . consented to the recording, there can be no violation of state or federal law." *State v. Eldridge*, 749 S.W.2d 756, 757 (Tenn. Crim. App. 1988) (citations omitted). Because an objection to the recording based on wiretap law would have been meritless, Petitioner's attorney was not ineffective for failing to raise it. *See Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) (explaining that an attorney is not ineffective for failing to raise a meritless argument).

### d.   Failure to "Address the Proof" that the CI was Asking for Money and Petitioner was Bringing It (Ground Two)

According to Petitioner, his attorney was also ineffective for failing to "address the proof [that] the CI allegedly asked defendant if he would mess with her for $200 [] and when the petitioner was arrested he had $200 in his possession" [Doc. 1, p. 6]. Petitioner claims that "the CI could have easily been asking for the money in question and the petitioner was bringing it" [*Id.*]. This theory of defense is not plausible. The overwhelming evidence at trial showed that Petitioner met with the CI in order to sell her cocaine. That Petitioner may have had $200 with him when he was arrested—several weeks after the alleged offense—is immaterial. Given that Petitioner's theory had no realistic chance of success, Petitioner's attorney was not ineffective for failing to pursue it. *See Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (noting that the Constitution "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

14

### e. Failure to Establish Disappearance of CI (Ground Two)

In addition, Petitioner asserts that he received ineffective assistance of counsel because his trial attorney "failed to establish that the CI was currently on the run and hiding from the police" [Doc. 1, p. 6]. It is unclear why Petitioner raises this claim, as the CI testified at Petitioner's trial. Hence, this ineffective assistance claim fails.

### f. Failure to Call Witnesses (Ground Two and Argument Eight)

Petitioner further claims that his attorney was ineffective for failing to investigate and subpoena "alibi witnesses" [Doc. 1, p. 67]. Petitioner also faults his attorney for not calling an expert "to establish the identity of the parties to the phone call, or to verify the call actually took place" [*Id.* at 5–6]. The decision whether to call a witness is "generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel." *Samatar v. Clarridge*, 225 Fed. Appx. 366, 372 (6th Cir. 2007). In light of the evidence at trial, Petitioner's suggestions that he had alibi witnesses and that he was not the person on the recorded phone call are not plausible. In any event, he has not identified these alleged witnesses or shown what testimony they would have provided. Thus, Petitioner cannot show that his attorney prejudiced his defense by failing to subpoena these witnesses. This claim fails.

### g. Failure to Adequately Argue for Mitigation (Argument Six)

Finally, Petitioner complains that "although a significant amount of mitigating proof was presented at sentencing," his attorney failed to ask the trial court to apply any of the

15

mitigating factors listed in Tenn. Code Ann. § 40-35-113 [Doc. 1, p. 62].  A petitioner alleging prejudice from trial counsel's failure to properly investigate and present mitigating evidence must show that there is a reasonable probability that the mitigating evidence not presented would have changed the outcome.  *See Strickland*, 466 U.S. at 694.  Here, Petitioner has not identified any mitigating evidence that his attorney failed to present, or how counsel's failure to request application of a certain mitigating factor prejudiced him.  Hence, he cannot establish a reasonable probability that additional mitigation or classification of the mitigation evidence as falling within a certain statutory factor would have changed the outcome of his case.  Moreover, to the extent that Petitioner bases his claim on an alleged violation of state law, it is not cognizable.  *See* § 2254(a) (mandating that habeas relief is only available where a state prisoner is held "in violation of the Constitution or laws or treaties of the United States").  Therefore, Petitioner is not entitled to relief on this claim.

The Court now turns to Petitioner's allegations of trial court error.

### 2. Trial Court Error

#### a. Subject Matter Jurisdiction (Arguments One and Two)

According to Petitioner, the trial court lacked subject matter jurisdiction over his trial and sentencing because of defects in the presentment [Doc. 1, p. 10, 35].  The sufficiency of a state court indictment is generally a matter of state law, not reviewable in a federal habeas proceeding.  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).  This is because the Fifth Amendment right to grand jury indictment, which applies in federal

16

criminal proceedings, has not been extended to the states.  *See Castaneda v. Partida*, 430

U.S. 482, 509 (1977) ("The Fifth Amendment right to a grand jury does not apply to a state

prosecution.")                    (*citing Hurtado              v.              California*,

110 U.S. 516 (1884)).

A challenge to the sufficiency of an indictment is only reviewable under § 2254

where the indictment deprived the petitioner of his Fourteenth Amendment Due Process

right to fair notice of the charges against him.  *See Roe*, 316 F.3d at 570 ("Beyond notice,

a claimed deficiency in a state criminal indictment is not cognizable on federal collateral

review.").  An indictment provides constitutionally sufficient notice if it "first, contains the

elements of the offense charged and fairly informs a defendant of the charge against which

he must defend, and, second, enables him to plead an acquittal or conviction in bar of future

prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Here, Petitioner cites three reasons he believes that he received insufficient notice of

the charges.

First, Petitioner claims that he lacked sufficient notice because the trial court

allowed the prosecutor to amend the indictment on the day of trial [*Id.* at 26].  He also

faults his attorney for failing to object to the amendments [*Id.* at 10].  A belated

modification in an indictment could prejudice the defense and, if the prejudice is excessive,

could also violate due process.  *Koontz v. Glossa*, 731 F.2d 365, 369–70 (6th Cir. 1984).

Here, the State's modification to the indictment was belated.  However, Petitioner cannot

show that he lacked adequate notice because the amendments did not introduce any new

17

offense elements. Rather, the changes consisted of the removal of the school zone enhancement from Counts Three and Four—a change which benefited Petitioner—and changing the school zone enhancement language in Count Two to match the language in Count One. Even if Petitioner lacked sufficient notice, he cannot show that he was prejudiced because the amended counts were ultimately merged into Count One, which was not amended. Because Petitioner was not prejudiced by the amendments, his allegations of trial court error and ineffective assistance of counsel fail.

Second, Petitioner asserts that the presentment was deficient because it did not list the CI as a potential State's witness [*Id.* at 13, 14, 33]. In support of this claim, he cites Tenn. Code Ann. § 40-17-106, which directs the district attorney general to include the names of witnesses set to testify on the presentment [*Id.* at 12]. Although pretrial disclosure of the witnesses who might testify against a criminal defendant may be required by state law or court rules, there is no Constitutional duty for a prosecutor to disclose all of his witnesses to the defense prior to trial. *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). "Rather, all the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial." *Lorraine v. Coyle,* 291 F.3d 416, 441 (6th Cir. 2002). Here, Petitioner cannot show that the State's failure to list the CI among its potential witnesses rendered his trial fundamentally unfair because the identity of the CI was known to the defense prior to trial. Indeed, the defense investigator had previously interviewed her. Moreover, to the extent Petitioner bases this claim on state law, it is not cognizable. *See* § 2254(a). Accordingly, this claim fails.

18

Finally, Petitioner asserts that "[t]he state failed to list within the presentment several statute[s] demanded to meet notice requirements" [*Id.* at 31]. As the record shows, the presentment included the statutes of the offenses for which Petitioner was charged and stated the elements of his offenses in the language of those statutes [*See* Doc. 11-1, p. 5–10]. This was sufficient to notify Petitioner of the statutory basis for his charges. Petitioner alleges that the school zone enhancement was omitted [*Id.* at 14], but he is mistaken since that statute was included [*see* Doc. 11-1, p. 6–7]. Petitioner also cites three other criminal statutes that he believes should have been listed in the presentment.[5] [*See* Doc. 1, p. 14, 33, 43]. However, none of those statutes include elements of the offenses charged. Hence, the Due Process Clause did not require that they be included.

In addition to his arguments regarding deficient notice, Petitioner claims that the indictment was void because a grand jury did not approve the amendments [Doc. 1, p. 10]. According to Petitioner, this violated his "right to be tried only by indictment/presentment returned by the grand jury" [*Id.*]. Again, however, as a state defendant, Petitioner did not have a federal right to indictment by grand jury. *See* 430 U.S. at 509 (1977). Therefore, the fact that the indictment was not returned by a grand jury did not violate Petitioner's Constitutional rights.

---

[5] The additional statutes that Petitioner claims were wrongly omitted from the presentment are Tenn. Code Ann. § 39-17-419 (inference of drug sale based on weight); Tenn. Code Ann. § 39-11-402 (criminal responsibility for conduct of another); and Tenn. Code Ann. § 39-11-403 (criminal responsibility for facilitation of felony) [Doc. 1, p. 14, 33, 43].

19

### b. Ordering Presentence Investigation (Argument Two)

In his next claim, Petitioner asserts that the trial court abused its discretion by appointing a presentence investigator [Doc. 1, p. 37, 45]. According to Petitioner, no presentence report ("PSR") should have been produced because the State "waived investigation of prior history, judgment of convictions, statutory enhancement factors, [and] additional sentencing punishments for a greater range of punishment" [*Id.* at 45]. Petitioner alleges that he was prejudiced by the PSR because the State used it to argue for sentencing enhancements [*Id.* at 36–38]. He also claims that his attorney was ineffective for failing to object to the presentence investigation [*Id.*].

Petitioner is correct that the State relied upon information in the PSR as a basis for sentencing enhancements. However, it is unclear why Petitioner believes that the prosecution waived its right to a PSR or why such a waiver would prohibit the trial court from ordering a presentence investigation. Moreover, as Petitioner seems to acknowledge, the trial court was required to appoint a presentence investigator under Tennessee law [*See* Doc. 1, p. 37–38]. *See* Tenn. Code Ann. § 40-35-205(a). Petitioner has not established that the presentence investigation violated his Constitutional rights. Thus, this claim of trial error and the corresponding ineffective assistance of counsel claim fail.

### c. Failure to Give Jury Instructions (Argument Eight)

Next, Petitioner asserts that "[t]he judge failed to instruct the jury o[n] all the facts and law to the case" [*Id.* at 67]. In particular, he seems to argue that the trial court failed to instruct the jury on the lesser included offense of casual exchange and that his trial

20

attorney was also in some way at fault despite having requested the instruction [Doc. 1, p. 62, 63, 67]. A state court's failure to give a jury instruction only rises to the level of a Constitutional violation if the error "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Here, the record shows that the trial court instructed the jury on casual exchange as a lesser included offense [*See* Doc. 11-5, p. 28–29, 32]. To the extent Petitioner contends that other jury instructions were wrongly omitted, he has not identified them. Therefore, this claim of trial court error and the corresponding ineffective assistance of counsel claim fail.

### 3.     Prosecutorial Misconduct

The remainder of Petitioner's claims involve allegations of prosecutorial misconduct. Prosecutorial misconduct claims are reviewed deferentially under § 2254. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To prevail on such a claim the petitioner must show that the prosecutor acted improperly, and that the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

### a.     Misconduct Regarding Amended Presentment (Arguments Four, Six, and Seven)

First, Petitioner asserts that the prosecutor acted improperly by causing him to be "convicted of offense elements not listed within the original presentment" [Doc. 1, p. 65]. The Court construes this allegation as a complaint that the presentment was amended

21

without the approval of a grand jury. However, as discussed above, a state criminal defendant does not have a Constitutional right to indictment by grand jury. Therefore, the prosecutor did not violate Petitioner's Constitutional rights by amending the presentment.

In addition, Petitioner claims that he was denied a fair trial because the prosecutor "suppressed" the amended presentment in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) [*Id.* at 46, 49]. Petitioner's reliance on *Brady* is misplaced. In that case, the Supreme Court held that a prosecutor's suppression of material, exculpatory evidence violates Due Process. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, a presentment is merely a charging instrument. It is not evidence. Therefore, the *Brady* rule does not apply here. To the extent that Petitioner argues that the prosecutor deprived him of adequate notice of the charges, his claim is likewise without merit. Petitioner has not identified any improper conduct on the part of the prosecutor. And Petitioner's attorney did not object to the amendments [Doc. 11-4, p. 6].

Even if Petitioner had shown that the prosecutor acted improperly, he cannot show that the amendments "infected the trial with unfairness." *See Darden*, 477 U.S. at 181. As discussed above, the amended counts—which were ultimately merged into Count One—did not impact his conviction or sentence. Petitioner claims that the prosecutor's belated amendments made it impossible for his attorney to "adequately investigate the case, make defenses with favorable information about the case" and "file valuable motions" [Doc. 1, p. 62.]. However, these conclusory allegations are insufficient to establish prejudice.

22

Accordingly, this prosecutorial misconduct claim, as well as any corresponding claim of ineffective assistance, is without merit.

### b.   Confrontation Clause Violation (Ground Three)[6]

Alleging that his Confrontation Clause rights were violated, Petitioner complains that "[t]estimony regarding the confidential informant was admitted, even though all testimony was hearsay, as CI was not present to testify at the trial" [Doc. 1, p. 6]. The Court believes Petitioner is referring to Officer Geddings's testimony regarding the unrecorded phone call between Petitioner and the CI in which Petitioner changed the location of the drug buy.

This claim is without merit. The Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless [s]he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Here, no Confrontation Clause violation occurred because the CI appeared as a witness at trial. Indeed, when Officer Geddings took the stand, the CI had already testified that Petitioner called her and changed the location of the drug buy. Because no Confrontation Clause violation occurred, Petitioner cannot establish that the prosecution acted improperly.

---

[6]   The Court refers to Petitioner's unnumbered "Police and Prosecutorial Misconduct" claims as "Ground 3" [*See* Doc. 1, p. 6].

23

### c. Failure to Introduce Expert Testimony Regarding Recorded Call (Ground Three)

Petitioner also complains that the "[u]ndercover officer recorded conversation between confidential informant and second person, but there was never any expert testimony that established the second party was actually the Petitioner" [Doc. 1, p. 6]. Petitioner seems to be arguing that the State could not properly introduce the recorded phone call—in which Petitioner agreed to the drug buy—without expert testimony. However, the authenticity of the recorded phone call, and the fact that Petitioner was the second party on the call were clearly established at trial. And there is no basis for Petitioner's claim that the absence of expert testimony violated his Constitutional rights. Nor has he shown that the prosecutor acted improperly in connection with the recorded call. Therefore, this claim fails.

### d. Perjury by Officer Geddings (Argument Three)

Petitioner claims that Officer Geddings committed perjury by testifying that he watched Petitioner approach the vehicle from within the school zone [Doc. 1, p. 39, 42, 44–45]. To prevail on a claim that the State's use of perjured testimony violated Due Process, a petitioner must show that "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

Here, Petitioner has not shown that Officer Geddings's testimony was actually false. Petitioner argues that Geddings must have "los[t] track of the defendant approaching the

24

vehicle" because he was "surprised when the defendant opened the back door of the vehicle and got in" [*Id.* at 44–45]. However, Petitioner mischaracterizes Geddings's testimony. Geddings testified that Petitioner's action of entering the back seat was unexpected, not because he had lost track of Petitioner, but because Geddings expected the drug transaction to take place outside the vehicle [*Id.* at 92]. This testimony is not inconsistent with Geddings's statement that he saw Petitioner approach the vehicle from a location within the school zone. Even if Geddings's testimony was somehow inconsistent, that is not sufficient to establish a perjury claim. *See Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000) (observing that a habeas petitioner must show that perjured testimony was not only inconsistent but was also "indisputably false."). Accordingly, this claim is without merit.

### e. Seeking Sentencing Enhancements (Argument Five)

In his final claim, Petitioner alleges that the State engaged in misconduct by arguing for sentencing enhancements. In particular, he argues that he was wrongly sentenced as a multiple offender because the State failed to provide 10-days' advance notice of its intent to seek the enhancement, as required under Tennessee law [*See, e.g.* Doc. 1, p. 50, 57, 60–61]. Petitioner also asserts that his attorney's failure to object to the lack of notice was "ineffective in itself as a matter of law" [*Id.* at 64]. [7]

---

[7] Petitioner also asserts that he was surprised by the State's arguing for sentencing enhancements because of an alleged "agreement with the state, that if he did not testify, that the state would not file a motion seeking its intention to include previous history: prior bad acts, conduct, behavior, as enhancement factors for purposes of sentencing" [Doc. 1, p. 55–56]. However, Petitioner points to no evidence in support of this allegation.

25

This claim seems to be based on state law. As such, it is not cognizable on federal habeas review. *See Kennedy v. Burgess*, No. 22-1101, 2022 U.S. App. LEXIS 24881, at *3 (6th Cir. Sep. 2, 2022) ("[F]ederal habeas corpus relief is unavailable for [a petitioner's] claim challenging defects in the habitual-offender notice to the extent that it is based on an alleged violation or perceived error of State law.").

To the extent that Petitioner may be alleging a Due Process violation, his claim is without merit. Due Process requires only that Petitioner receive reasonable notice and an opportunity to be heard regarding the multiple offender enhancement. *Id.* at 4. Here, the record does not contain a copy of a written notice. However, as Respondent points out, the sentencing transcript reflects that adequate notice was provided. At the sentencing hearing, the prosecutor mentioned having given notice of the enhancement [Doc. 11-5, p. 82]. Petitioner's attorney did not object or express surprise [*Id.* at 87–89]. Indeed, Petitioner's attorney stated that the enhancement was "probably correct" [*Id.* at 89]. And when the trial court gave Petitioner an opportunity to be heard, Petitioner did not mention the enhancement [*Id.* at 11-5, p. 89–90].

Even if reasonable notice was not given, Petitioner cannot show prejudice. The multiple offender enhancement only applied to Petitioner's conviction for sale of cocaine (Count Three) [Doc. 11-5, p. 82–83]. The enhancement did not apply to the conviction for possession of cocaine in a school zone with intent to sell (Count One). Because Count Three was ultimately merged into Count One, Petitioner's sentence was not impacted by

26

the multiple offender enhancement. Accordingly, this claim of prosecutorial misconduct fails, along with the corresponding claim of ineffective assistance.

## IV. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a Constitutional right. 28 U.S.C. § 2253(c)(2). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a Constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484. When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a Constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

27

## V. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus under § 2254 is **DENIED,** a COA is **DENIED,** and this action is **DISMISSED.**

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE